UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

**CHRISTOPHER R.,**

**Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant**.

Case No. 1:20-cv-01208-TPK

OPINION AND ORDER

## OPINION AND ORDER

    Plaintiff filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security.  That final decision, issued by the Appeals Council on July 6, 2020, denied Plaintiff's application for disability insurance benefits.  Plaintiff has now moved for judgment on the pleadings (Doc. 12), and the Commissioner has filed a similar motion (Doc. 14).  For the following reasons, the Court will **DENY** Plaintiff's motion for judgment on the pleadings, **GRANT** the Commissioner's motion, and **DIRECT** the Clerk to enter judgment in favor of the Defendant.

### I.  BACKGROUND

    On May 24, 2017, Plaintiff protectively filed his application for benefits, alleging that he became disabled on October 8, 2014.  After initial administrative denials of his application, Plaintiff appeared at an administrative hearing held on April 16, 2019.  Both Plaintiff and a vocational expert, Edmund A. Calandra, testified at that hearing.

    The Administrative Law Judge issued an unfavorable decision on June 5, 2019.  In that decision, the ALJ first concluded that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2019, and that he had not engaged in substantial gainful activity since his alleged onset date.  He then found that Plaintiff suffered from severe impairments including spine disorder, pain disorder, and depression.  He further determined that these impairments, viewed singly or in combination, were not of the severity necessary to qualify for disability under the Listing of Impairments.

    Moving on to the next step of the inquiry, the ALJ found that Plaintiff had the residual functional capacity to perform light work except he could only occasionally climb, balance, stoop, kneel, crouch, or crawl.  He could also maintain attention, concentration, persistence and pace sufficient to carry out simple tasks and instructions and could tolerate simple routine

changes in a work setting..

The ALJ next determined that Plaintiff could not do his past relevant work as a firefighter and a car salesperson. The ALJ additionally found, however, that even with these limitations, Plaintiff could perform jobs like cashier, assembler, and maid, and the ALJ determined that these jobs existed in significant numbers in the national economy. The ALJ therefore concluded that Plaintiff was not under a disability as defined in the Social Security Act.

Plaintiff, in his motion for judgment, raises a single issue. He contends that the ALJ erred by not including limitations on reaching or prolonged sitting or standing found in the functional capacity evaluation upon which the ALJ relied.

## II.  THE KEY EVIDENCE

### A.  Hearing Testimony

The Court begins its review of the evidence by summarizing the testimony given at the administrative hearing. Plaintiff, the first witness, said that he was 44 years old and lived with his wife and three children. He had a high school education. Plaintiff testified that he could drive short distances but long drives were painful. He was a retired firefighter and was receiving a disability pension from that work. In the past, he had worked a second job selling cars but quit that job well before he retired.

When asked about the injury he received while working as a firefighter, Plaintiff said that he hurt his back trying to lift a gurney with a heavy patient. He then had multiple surgeries as well as steroid injections and noticed a little improvement in his back after the second surgery, but his leg was worse. His left leg was giving him problems, including falling, and he had been approved for physical therapy. He could not climb stairs without using a railing. He took over-the-counter pain medication due a fear of becoming addicted to opioids.

Plaintiff said that he could lift up to twenty pounds but not on a regular basis. He also needed to change positions frequently and could not sit or stand for more than half an hour. He also had been seeking treatment for depression but did not take medication for that condition. He was not able to do yard work any longer. Plaintiff testified that he did not sleep well and just tried to stay busy during the day, but it was difficult to do things. He did some exercises to strengthen his core as prescribed by his doctor and sometimes they helped. He had sharp, burning pain in his back and a pins and needles feeling in his left leg. Sudden movements and physical activity made the pain worse. In a month, he had more bad days than good days and he reported lack of focus and crying spells.

The vocational expert, Mr. Calandra, characterized Plaintiff's past work as a firefighter as very heavy and skilled. The car salesperson job, he said, was light and skilled. He was then asked about a person with Plaintiff's educational and vocational background who was limited to

light work with various postural restrictions and who could do only simple tasks in a relatively stable work environment.  In response, he said that such a person could not do Plaintiff's past work but could be employed as a cashier, assembler, or maid.  He also testified that a number of limitations (if they existed) would preclude employment, including not being able to sit, stand, and walk for a full workday, being absent from work four times per month, being off task one-third (or even more than ten percent) of the time, and being unable to tolerate customary work stress.

### B.  Treatment Records

The medical records confirm Plaintiff's testimony that he injured himself at work, had several surgeries, and continued to report pain and other symptoms in his back and left leg.  The incident occurred on October 6, 2014, and Plaintiff was treated in the emergency department the following day and then had some chiropractic treatment.  An MRI done one week following the injury showed a left paracentral disc protrusion at L5-S1 encroaching on the left nerve root as well as some milder degenerative changes.  He was given steroid injections with some relief and participated in a round of physical therapy, but ultimately underwent a left L5-S1 laminectomy and microdiscectomy in 2015 and then a second surgery in February of 2016.  By December of that year, he had completed a second course of physical therapy but was still experiencing an aching sensation in his back worsened by twisting or repetitive lifting.  His surgeon, Dr. Stofffman, thought that Plaintiff needed to build up his endurance through exercise and core strengthening.  He rated Plaintiff's extent of disability at that time at 75%.  (Tr. 596).  That rating continued to be noted throughout 2017 and 2018.  There are also a number of chiropractic treatment records from that time frame.

A psychologist, Dr. Cain, saw Plaintiff for a psychological evaluation on July 12, 2017, for purposes of determining how his work injury affected his mental condition.  She observed that his affect was labile and his mood was depressed.  He reported chronic pain, depression, and anger, and said he had difficulty coping with activities of daily living.  Plaintiff was diagnosed with an adjustment disorder with mixed anxiety and depressed mood, pain disorder with related psychological factors, and chronic intractable pain, and psychological treatment was recommended.  (Tr. 775-79).  There do not appear to be any counseling notes in the record.

### C.  Opinion Evidence

Turning to the opinion evidence, Dr. Brauer conducted a consultative examination on July 6, 2017, when Plaintiff was six months post-surgery.  At that time, Plaintiff had back pain which he rated as 5/10 and which radiated into his left leg.  He was able to cook occasionally and could shower and dress himself.  On testing, straight leg raising was normal and Plaintiff had close to a full range of motion in his back.  Dr. Brauer diagnosed chronic low back pain and stated that Plaintiff had a moderate limitation in his ability to push, pull, lift, and carry heavy objects repetitively and a marked limitation in his ability to perform activities requiring repetitive bending.  (Tr. 766-69).

Dr. Ippolito, a psychologist, conducted a consultative psychiatric evaluation on July 25, 2017. She reported that Plaintiff had undergone some counseling in the past and had started to see Dr. Cain for treatment of depression. His attention, concentration, and memory skills were intact and his insight and judgment were good. He was able to socialize with friends and family. Dr. Ippolito thought that Plaintiff could perform the mental requirements of simple work and said that his psychiatric problems were not significant enough to interfere with his ability to function on a daily basis. (Tr. 781-85). That evaluation appears to be consistent with a form filled out by Plaintiff's former counselor, Ms. Richards, who saw no limitations in his ability to understand, remember, attend and concentrate, and adapt to changes in the work setting. (Tr. 789-91).

Plaintiff was seen by Jennifer Gula at Buffalo Ergonomics OT Services on August 26, 2017, for a functional capacity evaluation. He demonstrated physical signs of pain throughout the evaluation, which lasted for several hours, and reported occasional stabbing pain in his low back, discomfort in his right buttock, and feelings of instability in his left leg. The limiting factors listed in Ms. Gula's report were mild limitations in postural activities "such as elevated work to 50"" and in static sitting, standing, walking, and balance; moderate limitations in postural activities "such as forward bending in standing, low level activity such as tall kneel and crawling," a moderate limitation in stair climbing, and a major limitation in rotation while standing. The only activity she though Plaintiff should avoid was stair climbing, and she summarized her report by concluding that he had demonstrated the ability to perform light work up to lifting 20 pounds and recommending that he be referred to vocational counseling and re-training to assist him in finding employment. The chart attached to her report indicate that he could not do continuous lifting and carrying including lifting from the waist to shoulder level and that he could perform elevated reaching up to 66% of the workday. That statement was qualified by her statement that such activity was safe to do on a frequent basis up to 50", safe to do occasionally up to 60", and safe to do rarely up to 70". (Tr. 818-22).

Finally, Dr. Aquino, one of Plaintiff's treating neurosurgeons, completed a physical treating medical source statement on January 28, 2019. He said that Plaintiff could walk for one block without pain, could only sit or stand for ten minutes at a time, and could sit, stand, and walk for less than two hours in a workday. He also needed to alternate positions at will and would have to take hourly unscheduled work breaks and to miss more than four days of work per month due to his impairments. (Tr. 851-55).

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence,

considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

## IV.  DISCUSSION

Plaintiff has raised one claim of error in his motion for judgment on the pleadings.  As noted, he takes issue with the ALJ's treatment of Ms. Gula's functional capacity evaluation report.  More specifically, he argues that there were both reaching and sitting limitations found in her report which the ALJ failed to incorporate into his residual functional capacity finding even though the ALJ found her report to have probative value and to offer insight into the severity of Plaintiff's impairments.  Plaintiff focuses on the section of her report quoted above concerning lifting to various heights as well as her comment that there were signs of increased discomfort with prolonged sitting, and argues, citing *Howen v. Saul*, 2021 WL 1169331 (S.D. Tex. Mar. 25, 2021), that when an ALJ finds an opinion to be somewhat persuasive, he is required to explain why all of the findings in that opinion were not adopted.  The Commissioner responds that Plaintiff has misconstrued the evaluation, contending that the reaching limitations contained in the report did not refer to reaching in any direction (which is a manipulative activity) but to reaching while bending, which is a flexibility and postural activity.  The Commissioner also asserts that Ms. Gula did not conclude that Plaintiff needed to alternate between sitting and standing, as he contends in his memorandum, but only that Plaintiff could accommodate his limitations by taking normal workday breaks.

The Court turns first to Plaintiff's reliance on the *Howen* decision.  There, the real issue was whether the ALJ sufficiently explained how he took into account two of the factors which must be considered in evaluating medical opinions, namely supportability and consistency.  In finding that the ALJ did not conduct a proper analysis, the court said this:

> The ALJ, despite the cursory statement that he found [a specific medical] opinion "somewhat persuasive," wholly failed to articulate how the medical evidence and [the doctor's] explanations supported her opinion or how consistent her opinion was with other sources as required by 20 C.F.R. § 404.1520c(b)(2), (c)(1), (c)(2)....This is in direct violation of the regulation's requirement that the ALJ articulate how he considered supportability and consistency. This is an error.

*Howen*, *supra*, at *6. The court went on to note that the opinion in question was, for the most part, more restrictive than was the ALJ's residual functional capacity finding, and critiqued the ALJ for stating that he found other opinions of record more persuasive without ever explaining why he did so. Thus, the overall import of *Howen* is to order a remand where an ALJ's decision does not provide any reviewable information about why the ALJ accepted some medical opinions while rejecting others. As noted, the Commissioner's position is that the ALJ here did not commit that type of error because his residual functional capacity finding does not differ significantly from the results of the physical capacity evaluation done by Ms. Gula once that evaluation is properly interpreted. This argument necessarily dovetails into an inquiry about whether the Commissioner's (and the ALJ's) reading of Ms. Gula's report is a reasonable one and therefore supported by substantial evidence.

By finding Ms. Gula's report to have persuasive value and by crafting the residual functional capacity finding which he made, the ALJ clearly did not see any major inconsistencies between the two. After reviewing the treatment records and explaining why, in his view, the ALJ found them to support only partially Plaintiff's testimony about the severity of his symptoms, the ALJ turned to a consideration of the functional capacity evaluation. He broadly characterized it as having "demonstrated [that Plaintiff had] the ability to perform up to 20 pounds of light physical demand level work." (Tr. 33). The ALJ noted, later in his decision, that Ms. Gula was not an acceptable medical source, but he nonetheless concluded that her evaluation had "probative value and offer[ed] insight into the severity of the claimant's impairments and secondary functional limitations." (Tr. 35). Plaintiff is correct that he offered no explanation for picking and choosing among the limitations she noted, so the key question is still whether the ALJ implicitly rejected any limitations which might have a significant impact on Plaintiff's ability to function in the workplace without providing a rationale for having done so.

The Court, while giving due consideration to Plaintiff's argument, cannot conclude that it is supported by the record. It is not so clear as Plaintiff contends that Ms. Gula actually said either that Plaintiff had the type of reaching restrictions he reads into her report or that he would require a sit/stand option in order to meet the demands of light work activity. As a starting point, the ALJ accurately summarized Ms. Gula's conclusion, which is set out in bold lettering on the first page of her report and which says this: "At this time [Plaintiff] has demonstrated the ability to perform up to 20#s of light physical demand level work, which would address the lifting and postural levels identified within the FCE form." (Tr. 818). She noted only slight abnormalities in the range of motion of his right shoulder and none on the left. He had only a mild limitation in postural activities "such as elevated work to 50"." (Tr. 819). The balance of her report consists

of the specific findings she made and her recommendations based on those findings. They include identifying an issue with his ability to counterbalance when lifting certain weights to certain heights and the comment that he could do so frequently for up to 50" off the ground and less frequently for higher elevations. That limitation says little to nothing about a general restriction on reaching either forward or overhead, which is the way Plaintiff suggests her conclusion should be interpreted. At the very least, the ALJ had a reasonable basis for interpreting it differently, which is all that is required under the applicable standard of review. *See, e.g., Mortise v. Astrue*, 713 F. Supp. 2d 111, 117 (N.D.N.Y. 2010) ("Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld").

The same rationale applies to the claim that Ms. Gula recommended a sit/stand option. Her comments about Plaintiff's tolerance for sitting, standing, and walking include the statement "Intermixed with other activity." She noted that he showed signs of increased back discomfort with prolonged sitting and that he sometimes had to support himself with one hand when engaging in prolonged standing and showed some signs of leg muscle fatigue with prolonged walking. She did not indicate that he required positional changes of any particular frequency nor that his limitations could not be accommodated by the occasional position changes which are typical of light work (*i.e.* up to six hours of sitting, standing, or walking in an eight-hour day) or by normal work breaks, which also accommodate positional changes. The specific hypothetical question posed to the vocational expert incorporated these six-hour limits on sitting, standing, and walking (Tr. 67) and the expert identified jobs which could be performed within those limitations. Again, the ALJ's interpretation of that portion of Ms. Gula's report, while perhaps not the only supportable one, was reasonable, and that precludes the Court from reaching a different conclusion here. Consequently, Plaintiff's one claim of error provides no basis for ordering a remand.

## V. CONCLUSION AND ORDER

For the reasons set forth in this Opinion and Order, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 12), **GRANTS** the Commissioner's motion (Doc. 14), and **DIRECTS** the Clerk to enter judgment in favor of the Defendant Commissioner of Social Security.

**/s/ Terence P. Kemp**
**United States Magistrate Judge**